**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT JENKINS,** | : | |
| | : | |
| **Petitioner** | : | |
| | : | **CIVIL NO. 3:CV-10-0984** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **SUPERINTENDENT OF LAUREL** | : | |
| **HIGHLANDS,** *et al.,* | : | |
| | : | |
| **Respondents** | : | |

**M E M O R A N D U M**

## I.  Introduction

This matter is before the court on a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 filed by Robert Jenkins.  (Doc. 1, Pet.)  Mr. Jenkins

challenges his York County Court of Common Pleas convictions for possession with

intent to deliver (PWID) a controlled substance (cocaine),[1] criminal conspiracy to

possess with intent to deliver a controlled substance (cocaine),[2]  false identification

to law enforcement,[3] and two counts of possession of a controlled substance

(cocaine and marijuana).[4]   Following a jury trial, he was sentenced to an aggregate

term of eleven to twenty-two years' imprisonment.  (Doc. 27-2, ECF p. 193,

---

[1]  *See* 35 P.S. § 780-113(a)(30).

[2]  *See* 18 Pa. Con. Stat. Ann. § 903(a)(1).

[3]  *See* 18 Pa. Con. Stat. Ann. § 4914(a).

[4]  *See* 35 P.S. § 780-113(a)(16).

*Commonwealth of Pennsylvania v. Jenkins*, 928 A.2d 1124 (Pa. Super.

2007)(Table, 279 MDA 2006).)

Based on consideration of the Petition, the Response (Doc. 27, Resp.), Mr.

Jenkins' Reply (Doc. 30, Reply), the state record, and the applicable law, the

Petition will be denied.  Additionally, a certificate of appealability will not be issued.


## II.     Background

### A.     Factual Background

Mr. Jenkins is challenging the validity of his conviction and sentence for

several drug-related offenses imposed by York County Court of Common Pleas.

The Pennsylvania Superior Court set forth the following statement of facts in its

opinion affirming Mr. Jenkins' convictions:

> [O]n March 19[, 2005,] at approximately 9:35 in the
> morning[,] York City Police officers received a dispatch
> from County Control advising that a homicide suspect by
> the name of Akeem Cole was seen going into an address
> on North Penn Street.  At that time various police officers
> responded to the residence.  Officer Blake McBride
> ["Officer McBride"] took up a position in the alley to the rear
> of the residence.  Officer McBride was familiar with the
> homicide suspect and had seen pictures of him during line[-
> ]ups.
>
> Detective [James] McBride ["Detective McBride"] overheard
> another police officer broadcast on the radio that there was
> a subject sitting on the front porch of the residence and
> gave a description of him as a black male wearing a red
> jacket. Upon Officer Hansen's arrival this subject fled back
> into the residence.  Officer McBride then saw this particular
> individual exit a third floor window out onto the second floor
> balcony.  Officer McBride yelled to the subject to not move

and to let him see his hands.  The subject then immediately went right back into the window again.

After other officers arrived Officer McBride went to the first floor apartment and ascertained that the second and third floor apartments did not have immediate access to the first floor.   While the police officers were in the first floor apartments they heard various footsteps on the second floor above them.  They also heard a toilet flushing.  The officers then knocked on the door of the second floor apartment and a female carrying a baby came downstairs and opened the door.  She was asked if anybody else was in the apartment and she advised [them] that there was one other person in the apartment.   She responded to this question the same [way] a number [of] times.  The police officers called upstairs to have the other individual come downstairs and [Jenkins] then did come downstairs.  The police again asked whether anybody else was in the upstairs apartment and they again were advised that no one else was upstairs.  Finally, a third person[5] did appear from the upstairs apartment and he was taken into custody.

Due to the fact that the police officers were unsure as to whether or not anybody else was in the upstairs apartment, the police decided to enter the apartment to look for Akeem Cole, the homicide suspect.  As they entered the apartment they saw various contraband, including a freezer bag with marijuana residue, marijuana residue around the toilet seat in the bathroom, and sandwich baggies and a digital scale in the kitchen, as well as packages of marijuana.  Also in the kitchen they found a glass Pyrex pot with white chunky substances caked around the outside of the pot.   At this time they obtained a search warrant for the residence.

[ ] Officer McBride noted that when he received a radio transmission from Officer Hansen he did not know whether the subject that [Officer Hansen] saw flee into the residence was Akeem Cole or not.  Officer McBride stated that when he saw the individual appear from the window coming out of the residence that he had no idea whether it was Akeem Cole or not.

---

[5]  The third person was later identified as Carlos Morales.  (Doc. 27-2, ECF pp. 101 - 108.)

(Doc. 27-2, ECF pp. 191 - 193, *Commonwealth of Pennsylvania v. Jenkins*, 988 A.2d 721 (Pa. Super. 2009)(Table, 2229 MDA 2008).)

The following additional facts are gleaned from the trial transcript.  As Officer Blake McBride, Officer Lawson and Sergeant Mehring entered the second floor apartment, they announced their presence as police officers and ordered anyone present to come out.  (Doc. 27-1, ECF pp. 95-96).  A "very strong odor of marijuana" was present as they ascended the stairs.  (*Id*.)   They continued to search the second and third floor area for additional individuals.  They concluded their security sweep, search when they determined neither Akeem Cole nor any other individual was present in the second or third floor apartment.  (*Id*., ECF p. 98.)

However, during the sweep of the second and third floor apartment, police observed drugs and drug paraphernalia the kitchen and bathroom of the apartment. (*Id*., ECF p. 97.)   At the conclusion of their security sweep, Officer McBride contacted Detective McBride and advised him of the presence of drug and other contraband.  (*Id*., ECF p. 98.)   The house was then secured while Detective McBride prepared and obtained a search warrant for the second and third floor apartment.  (*Id*., ECF pp. 111-12.)

Upon obtaining the search warrant, Detective McBride advised the on-site detectives that he "had a signed search warrant and they could start searching." (*Id*., ECF p. 111.)  An inventory of items seized from the apartment was made.  The seized items included sandwich baggies, baking soda, and a black digital scale seized from the kitchen.  (*Id*., ECF p. 115-16.)  Two additional digital scales were

-4-

found elsewhere in the apartment.  (*Id.*, ECF p. 122 and p. 129.)  Approximately a pound of marijuana was confiscated from the apartment's toilet trap.  (*Id.*, ECF p. 136.)  Two baggies of cocaine hydrochloride were found inside the kitchen refrigerator.  (*Id.*, ECF p. 140 and pp. 320 - 322.)  Over 100 grams of cocaine was discovered during the search.[6]

Several letters addressed to Norma Gonzalez were seized from the kitchen. (*Id.*, ECF pp. 117-18.)  The letters were taken by the police "for the fact [they] verify their address."  (*Id.*, ECF p. 160.)  The parties stipulated that the letters were addressed to Ms. Gonzalez but the contents of the letters were meant for someone else who used the nickname "Black".   (*Id.*, ECF p. 157, pp. 160 - 162, pp. 266 - 67.) Based on the return address of many of the envelopes, it was clear that many of the letters came from individuals incarcerated at various state correctional facilities. (*Id.*)  At trial Mr. Jenkins' attorney objected to the admission of letters that were sent by Mr. Jenkins, a/k/a Roy Jeeter, while he was incarcerated.  (*Id.*, ECF p. 244).  The court agreed with counsel that the introduction of such testimony would prejudice Mr. Jenkins.  (*Id.*, ECF p. 344.)  Additionally, while the jury did hear testimony that many of the letters came from individuals in prison, the parties agreed that the letters themselves, including their envelopes, would not be accessible to the jury during their deliberations.   (*Id.*, ECF pp. 344 - 45.)

---

[6]  At trial, the parties entered into a stipulation as to the various types and quantities of drugs seized from the second and third floor apartment areas.  (*Id.*, ECF pp. 196 - 199.) Over 100 grams of cocaine and 6.99 grams of marijuana was seized from the second floor apartment. (Doc. 27-1, ECF pp. 197 - 199 and ECF p. 346.)

A loaded .45 caliber semiautomatic handgun was found in the bottom of a cupboard in the kitchen.  (*Id*., ECF p. 123.)  Also found in the kitchen were two Western Union receipts for Robert Jenkins:  one was for $200.00 sent to "a Johnson in Bronx, New York" and the other was for $400.00 sent to "Ms. Johnson".  (*Id*., ECF p. 128.)  A photo album was also taken from the apartment.  (*Id*., ECF pp. 163 - 164, and p. 265.)  Mr. Jenkins appears in some of the photos as do other unidentified individuals. (*Id*., ECF pp. 265 - 66.)

Money was also recovered from the scene.  Approximately $150.00 in cash was found in the kitchen.  (*Id*., ECF pp. 131-32.)  An additional $100.00 was found in a vehicle that was left running in front of the residence that day.  (*Id*., ECF pp. 132-33.)  Additional monies were recovered from the occupants of the home. Carlos Morales had $777.00 in cash on his person when searched at the police station.  The money was located in his right front pocket and the toes of his sneakers.  (*Id*., ECF p. 133.)  Officer Clarkson recovered $444.00 in cash from "Mr. Jenkins, or Jeeter, whichever one you want to call him." (*Id*.)  The $444.00 was broken down in the following denomination: "19 twenty-dollar bills, 2 torn twenty-dollar bills, 4 five dollar bills, and 4 one-dollar bill." (*Id*.)  Four different cell phones were also "taken off Mr. Jenkins." (*Id*., ECF p. 134.)

Ms. Gonzalez testified at trial that she received a deal in exchange for her testimony for the Commonwealth.  (*Id*., ECF p. 272.)  Several drug charges were dropped and she agreed to plead guilty to conspiracy to deliver cocaine.  (*Id*., ECF pp. 272 - 73.)

Ms. Gonzalez testified that her name was on the lease for the second and third floor apartment at 315 North Penn Street house.  Her rent was $550.00 per month.  (*Id.*, ECF p. p. 257.)  She stated that she earned approximately $200.00 per week babysitting for Melissa Parker and a friend named Rosa.  (*Id.*, ECF p. 219, pp. 270 - 271.)  Police contacted Ms. Parker to verify Ms. Gonzalez's story and her source of income.  Detective Shaffer concluded that Ms. Gonzalez's statements as to her income were inconsistent with what Ms. Parker related.  (*Id.*, ECF pp. 119 - 120.)

Ms. Gonzalez also testified that on March 19, 2005, Robert Jenkins was living with her and their daughter in the second and third floors of the house at 315 North Penn Street.  (*Id.*, ECF p. 73, pp. 241 - 43, p. 255.)  Mr. Jenkins had keys to the apartment.  (*Id.*, ECF p. 260.)  Although he was not working, he "went half and half" with Ms. Gonzalez on all of the bills.  (*Id.*, ECF p. 271.)  Ms. Gonzalez testified that Mr. Jenkins stored his clothing in the third floor closets of the apartment and his numerous pairs of boxed sneakers in the second floor living room.  (*Id.*, ECF p. 255 - 56.)  Sixty to seventy pairs of men's sneakers were confiscated from the apartment.  (*Id.*, ECF p. 217.)  The police also confiscated expensive clothing from the apartment.  (*Id.*, ECF p. 267.)

During the arrest booking process, Mr. Jenkins identified himself as the same and was photographed and fingerprinted.  (*Id.*, ECF pp. 145-46.)  The results of his fingerprints came back for a Roy Jeeter, not Robert Jenkins.  When confronted with

this information, Mr. Jenkins admitted to being Roy Jeeter and provided the police with his proper date of birth and social security number.  (*Id.*, ECF p. 146.)

Carlos Morales, when interviewed by the police, stated that he went to 315 North Penn Street to smoke marijuana with Mr. Jenkins.  (*Id.*, ECF p. 220.)  On cross-examination by Mr. Morales' counsel, Detective Shaffer was asked if Mr. Morales indicated that "Jenkins was his marijuana-smoking buddy?"  (*Id.*)  Detective Shaffer responded, "Marijuana-smoking buddy, that is correct."  (*Id.*)  He also told the police he brought about one ounce of cocaine, a small bag of marijuana, and the .45 caliber handgun with him to the apartment.  (Doc. 27-1, ECF pp. 210.)

### B.      Procedural Background

On July 14, 2005, Mr. Jenkins filed a timely pretrial motion to suppress.  (Doc. 27-2, ECF pp. 5 - 10.)  A hearing on the motion was held on September 1, 2005. (Doc. 27-2, ECF pp. 11 - 75.)  The motion was denied on the same day.   (Doc. 27-2, ECF pp. 76 - 69.)

On September 15, 2005, following a jury trial, Robert Jenkins was convicted of possession of cocaine with intent to deliver, criminal conspiracy for the same, simple possession of cocaine, simple possession of marijuana, and false identification to law enforcement.[7]  He was found not guilty of possession with intent to deliver marijuana.  (Doc. 27-2, ECF p. 81.)

---

[7]   The Court takes judicial notice of Court of Common Pleas York County docket sheet in Mr. Jenkins' criminal conviction:  *Commonwealth v. Jenkins*, CP-67-CR-0002922-2005, which is available through Pennsylvania's Unified Judicial Docket System docket research at: http://ujsportal.pacourts.us/.

On November 21, 2005, he was sentenced to an aggregate term of eleven to twenty-two years in a state correctional institution.  (Doc. 27-2, ECF pp. 79 - 83.)  When determining Mr. Jenkins' sentence for possession with intent to deliver cocaine, the sentencing court noted that it was Mr. Jenkins' second drug offense and that the parties disputed whether or not he should be charged with the full amount of the cocaine found inside the apartment, over 100 grams.  (Doc. 27-2, ECF pp. 81 - 82.)   The sentencing court stated that based on the evidence adduced at trial, it was satisfied that Mr. Moralez and Mr. Jenkins were accomplices involved in a "cocaine vending operation."  (Doc. 27-2, ECF pp. 82.)   Accordingly, the court held Mr. Jenkins responsible for the entire amount of cocaine found in the house, and sentenced him to the mandatory minimum of seven to fourteen years' imprisonment.  Next, the sentencing court imposed a five to ten year sentence on the firearm application.  (*Id.*, ECF p. 82.)  Mr. Jenkins' counsel objected as to this aspect of the sentence since Mr. Jenkins was never charged with a firearms offense at all.  (*Id.*)  On November 28, 2005, Mr. Jenkins filed a motion for modification of sentence (Doc. 27-2, ECF pp.  84 - 89), which was denied on December 28, 2005, following a hearing.  (*Id.*, ECF pp. 90 - 94.)

Mr. Jenkins filed a timely notice of appeal.  (*Id.*, ECF pp. 95 - 100.)  The following four claims were addressed by the Pennsylvania Superior Court on direct appeal:

> 1.   Whether the trial court erred by denying Jenkins's suppression Motion when the evidence was seized as a result of an unlawful warrantless search, which was the basis for the subsequent search warrant?

2.  Was it error to deny Jenkins's suppression Motion when the search was unlawfully begun before the search warrant was on the premises and before it was shown or read to Jenkins or any resident?

3.  Whether there was sufficient evidence as a matter of law to support Jenkins's criminal conspiracy conviction?

4.  Did the trial court abuse its discretion by imposing a consecutive sentence for criminal conspiracy which was unreasonable, excessive, and grossly disproportionate to the sentences of his co-defendants?

(*Id.*, ECF p. 194, *Commonwealth v. Jenkins*, 928 A.2d 1124 (Pa. Super. Ct. 2007).)

On April 11, 2007, the Pennsylvania Superior Court affirmed the judgment of sentence.  (*Id.*, ECF pp. 191 - 208.)  Mr. Jenkins then filed a timely petition for allowance of appeal with the Pennsylvania Supreme Court.  (*Id.*, ECF pp. 109 - 161.)  That court  denied the petition on September 28, 2007.  (*Id.*, ECF p. 209, *See Commonwealth v. Jenkins,* 594 Pa. 676, 932 A.2d 1286 (Pa. Sept. 28, 2007)(Table, No. 390 MAL 2007).)  Mr. Jenkins did not petition for *certiorari* to the United States Supreme Court.

On October 1, 2007, Mr. Jenkins filed a timely petition (Doc. 27-2, ECF pp. 217 - 241) pursuant to the Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. § 9541 *et seq.*  In his Petition he raised the following claims based on the alleged ineffectiveness of his counsel, Richard F.  Maffett, Jr., who represented him at trial, sentencing and on direct appeal, and who failed to:

(1) object to Detective Shaffer's hearsay testimony that co-defendant Morales stated he was Jenkins' "marijuana-smoking buddy";

(2) impeach police officer who "fabricated" testimony concerning Jenkins' possession of four cell phones or $444.00 in small denominations in his wallet when arrested;

(3) object to the court's jury instruction as to Flight or Concealment;

(4) object to the introduction of irrelevant and prejudicial evidence in the form of letters addressed to Ms. Gonzalez that originated from various state correctional institutions as well as items of clothing and photographs seized at the apartment; and

(5) object to the introduction of Detective Shaffer's hearsay testimony regarding his discussion with Melissa Parker in effort to verify Ms. Gonzalez's income.

(Doc. 27-2, ECF p. 242- 280). The York County Court of Common Pleas, now acting as the PCRA court, denied the petition following a December 4, 2008 hearing (Doc. 27-2, ECF p. 242- 280). Although he filed a timely notice of appeal, his attorney moved to withdraw pursuant to *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 379 Pa. Super. 390, 550 A.2d 213 (Pa. Super. Ct. 1988)(*en banc*). (*Id*., ECF pp. 293 - 296, pp. 297 - 299; pp. 300 - 307.) On November 10, 2009, the superior court affirmed the PCRA court's denial of the petition. (*Id*., ECF pp. 308 - 320, *Commonwealth of Pennsylvania v. Jenkins*, 988 A.2d 721 (Pa. Super. Nov. 10, 2009)(Table, No. 2229 MDA 2008).) On December 9, 2009, Robert Jenkins filed a *pro se* Motion to File Petition for Allowance of Appeal Nunc Pro Tunc and for the Appointment of Counsel. (*Id*., ECF pp. 321 - 325.) The Pennsylvania Supreme Court issued a *per curiam* one line order on April 27, 2010, denying the motion. (*Id*., ECF p. 326, *Commonwealth of*

*Pennsylvania v. Jenkins*, No. 219 MM 2009 (Pa. April 27, 2010)(unpublished slip op.).)

Mr. Jenkins filed his habeas petition on May 7, 2010.  (Doc. 1, Pet.)  Initially, this court dismissed the Petition as untimely filed.  *See Jenkins v. Superintendent of Laurel Highlands*, Civ. No. 3:CV-10-0984, 2010 WL 4623859 (M.D. Pa. Nov. 3, 2010).  On appeal the Third Circuit Court of Appeals reversed and remanded the matter back for further proceedings.  *See Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80 (3d Cir.  2013).

In his Petition Mr. Jenkins raises the following claims for habeas corpus relief: (1) the warrantless entry into second floor apartment which led police to discover drugs and other contraband in the home violated his Fourth Amendment rights; (2) were the sentences imposed manifestly unjust and illegal as they were based upon a quantity of cocaine in excess of 100 grams when the jury made no specific finding of the amount of cocaine attributable to him and because the trial court erred when finding the mandatory minimum sentence applicable for possession of a firearm in connection with a drug offense applicable to him when he was not charged with a firearms offense; (3) trial counsel was ineffective in failing to object to the admission of statements made by his co-defendant, Mr. Morales, to police that he was Petitioner's "marijuana-smoking buddy;" (4) trial counsel was ineffective for failing to impeach police officers who fabricated testimony as to the items and money allegedly in Mr. Jenkins' possession when arrested; (5) trial counsel was ineffective in failing to object to the court's jury instruction on "Flight or Concealment"; (6) trial counsel was ineffective in failing to object to the admission of irrelevant and

prejudicial letters addressed to Ms. Gonzalez which originated from various state correctional institutions; and (7) trial counsel was ineffective for failing to object to the introduction of hearsay testimony by Detective Shaffer concerning Ms. Parker's statements regarding how much she paid Ms. Gonzalez for weekly babysitting services.  (Doc. 1, Pet.)

### III.    Standard of Review

This petition is governed by the applicable provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under AEDPA, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 97 - 98, 131 S.Ct. 770, 784 - 85, 178 L.Ed.2d 624 (2011); *Williams v. Taylor*, 529 U.S. 362, 404 - 05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams*, 529 U.S. at 384 - 86, 120 S.Ct. at 1508 - 1509, while the second prong applies to decisions based on factual determinations, *Miller–El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412 - 13, 120 S.Ct. at 1523.  A state court decision is an "unreasonable application of Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 529 U.S.  at 413, 120 S.Ct. at 1523.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.*, 529 U.S. at 411, 120 S.Ct. at 1522.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 529 U.S. at 413, 120 S.Ct. at 1523.   "Under § 2254(d)(1)'s 'unreasonable application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, 529 U.S. at 411, 120 S.Ct. at 1523.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *Id.*,

529 U.S. at 409, 120 S.Ct. at 1522.  The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 – 04, 111 S.Ct. 2590, 2594-95, 115 L.Ed.2d 706 (1991).  When there is no reasoned opinion from the highest state court considering a petitioner's claims, the court "looks through" to the last reasoned opinion.  *See Ylst*, 501 U.S. at 804, 111 S.Ct. at 2595.

The Supreme Court has affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions.  *See Harrington,* 562 U.S. at 96 - 100, 131 S.Ct. at 783 – 85; *Felkner v. Jackson*, 562 U.S. 594, ___, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011).  The Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  *Id.* at ___, 131 S.Ct. at 1307 (citation omitted).  With these principles in mind regarding the standard and limited scope of review in which this court may employ in federal habeas proceedings, the court addresses Mr. Jenkins' claims.

## IV.    Discussion

Mr. Jenkins' habeas petition contains seven grounds for relief, five of which are claims of ineffectiveness of trial counsel.  All claims are properly exhausted.  Upon review, none of the claims have merit.  The court will now address each claim in turn.

### A.    Whether the Commonwealth Violated Mr. Jenkins' Fourth Amendment Rights Fails to State a Cognizable Habeas Claim.

Mr. Jenkins' Fourth Amendment claim is barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at trial."  *Id*. at 482, 96 S.Ct. at 3046.

The Third Circuit Court of Appeals has "recognized there may be instances in which a full and fair opportunity to litigate was denied to a habeas petitioner." *Marshall v. Hendricks*, 307 F.3d 36, 83 (3d Cir. 2002).  However, to overcome the *Stone* bar, petitioner would have to demonstrate "a structural defect in the system itself prevented [petitioner's] claim from being heard."  (*Id*.)

Pennsylvania provides an approved mechanism for litigating Fourth Amendment claims and Mr. Jenkins availed himself of that process.  His counsel raised the identical Fourth Amendment claims in his Omnibus Pre-Trial Motion

which sought the suppression of all evidence obtained as a result of the illegal entry

and the subsequent search warrant which was based upon information gained

during the initial illegal search of the apartment.  (Doc. 27-2, ECF pp. 4 - 10.)

Counsel raised these issues during a suppression hearing held on September 1,

2004.  (*Id.*, ECF pp. 11 - 78.)  He also had a full and fair opportunity to litigate his

Fourth Amendment issues on appeal before the State courts.  *See Id.*, ECF pp. 95 -

101 and pp. 109 - 161.  In his Reply, Mr. Jenkins states that his motion to suppress

was "erroneously denied."  (Doc. 30, ECF p. 2.)  A state court's "erroneous or

summary resolution" of a petitioner's Fourth Amendment claim does not amount to

the denial of a full and fair opportunity to litigate the claim.  *Marshall*, 307 F.3d 83.

Mr. Jenkins' dissatisfaction with the outcome of the State's resolution of his Fourth

Amendment challenges does not overcome the *Stone* bar against federal collateral

review of Fourth Amendment claims.  Accordingly, Mr. Jenkins' Fourth Amendment

claim is denied.


**B.      Whether Mr. Jenkins' Aggregate Sentence of Eleven
          to Twenty-Two Years is Manifestly Unjust and Illegal
          is a Cognizable Habeas Claim as His Sentence does
          Not Exceed the Relevant Statutory Limits.**

Mr. Jenkins was sentenced to seven to fourteen years' imprisonment on the

possession with intent to deliver conviction and four to eight years on the criminal

conspiracy charge; the sentences to run consecutively.  Mr. Jenkins claims that the

trial court imposed an unreasonable and manifestly excessive sentence when it

imposed consecutive sentences and attributed a specific amount of cocaine to him

where the jury failed to make such a determination.  He also alleges the court erred

by imposing a mandatory minimum based on the presence of a firearm in the

apartment when he was not charged with a firearms offense.  (Doc. 1, ECF pp. 6-7.)

Mr. Jenkins' claim concerning his sentence is not cognizable on federal

habeas review.  Generally, violations of state law, standing alone, will not entitle a

petitioner to federal habeas relief, absent a showing that those violations are so

great as to be of a constitutional dimension.  *Estelle v. McGuire*, 502 U.S. 62, 67 -

68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991)(federal habeas courts are not

permitted to review questions of state law).  An excessive sentence claim may not

be grounds for habeas corpus relief where the petitioner's sentence is within the

range prescribed by state law.  *Jones v. Supt. of Rahway State Prison*, 725 F.2d 40,

43 (3d Cir. 1984)(sentencing errors based on state law are not cognizable grounds

for habeas relief.)  As a general rule, a federal court will not review state sentencing

determinations unless it exceeds statutory limits.  *See United States v. Fisher*, 502

F.3d 293, 299 (3d Cir. 2007).

Mr. Jenkins raised this claim on direct appeal.  The Superior Court of

Pennsylvania rejected this claim concluding as follows:

> When a defendant raises an issue that implicated the
> discretionary aspect of his sentence, the defendant must
> petition this Court for permission to appeal and
> demonstrate that there is a substantial question that the
> sentence imposed was not appropriate under the
> Sentencing Code or was contrary to the fundamental
> norms that underlie the sentencing process.  *See* 42
> Pa.C.S.A. § 9781(b); *Commonwealth v. Tuladziecki*, 522
> A.2d 17 (Pa. 1987).
>
> . . .

It is clear that the Sentencing Code permits a court to impose consecutive sentences for multiple offenses. *See* 42 Pa.C.S.A. § 9721(a) (holding that, in determining the sentence to be imposed, the court may impose sentences consecutively or concurrently). Thus, Jenkins does not state a substantial question in this regard.

. . .

We will therefore address Jenkins's claim that his sentence was unreasonable, excessive, and grossly disproportionate to that of his co-defendants.

Our standard or review of sentencing matters is as follows: Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that, the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifest unreasonable decision. *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

This Court in *Cleveland*[8] held that a sentencing court need not "specifically refer to the sentence of a co-defendant." *Id*. Rather, in order to justify the imposition of disparate sentences, "a sentencing court must give reasons particular to each defendant explaining why they received their individual sentences." *Id*.

In this case, the record indicates that the standard guidelines range for Jenkins's conviction of criminal conspiracy was 48 to 66 months. *See* N.T., 11/21/05, at 5. The trial court sentenced Jenkins to 4 to 8 years on the conspiracy charge, which was within the standard guideline range. *See id*. In sentencing Jenkins, the trial court had before it a pre-sentence report. *Id*. at 2.

---

[8] *Commonwealth v. Cleveland*, 703 A.2d 1046 (Pa. Super. 1997).

The trial court gave the following reasons for its sentence on the criminal conspiracy charge:

We believe our Sentencing Order adequately covers the reason for our sentencing.  We noted this was [Jenkins's] second drug offense, and that he chose to operate a large scale drug vending operation from an apartment occupied by a single mother with a young child present.  Based upon all of the evidence, we felt that [Jenkins's] utilization of other individuals in his drug vending operation was a significant separate criminal offense, and to give him concurrent sentences would depreciate the severe nature of his particular crime.

. . .

[W]e viewed [Jenkins] as the ring leader of this cocaine vending operation.  Mr. Morales was young compared to [Jenkins], and Ms. Gonzalez was a single mother who was economically disadvantaged, and whom [Jenkins] utilized to assist him in his drug vending operation.  In addition, [Jenkins] had a prior history of drug dealing.

Trial Court Opinion, 5/31/06, at 7 - 8.  Thus, the trial court explained its reasons for its individual sentence for Jenkins.  Based on the above, we conclude that Jenkins's sentence was not excessive, unreasonable, or grossly disproportionate to that of his co-defendants.[2]

FN2: Jenkins indicates that Morales received an aggregate sentence of five to ten years, and Gonzalez received an aggregate sentence of eleven and one-half to twenty-three months.  *See* Brief of Appellant at 8.

(Doc. 27-2, ECF pp. 201 - 204.)

Here, the trial court imposed a seven to fourteen years' sentence for the possession with intent to deliver (cocaine) conviction and four to eight years on the criminal conspiracy charge; the sentences to run consecutively.  Mr. Jenkins' aggregate term of imprisonment is eleven years to twenty-two years.  At trial the parties entered into a stipulation that over 100 grams of cocaine was seized from

the apartment.  (Doc. 27-1, ECF pp. 196 - 199 and ECF p. 346.)  The sentencing court also took into account that this was Mr. Jenkins' second conviction for drug trafficking.  The statutory provisions underlying the sentence imposed by the trial court are set forth as follows:

- Possession with Intent to Deliver (cocaine), 35 P.S. § 780-113(a)(30)

  Mandatory Minimum: 18 Pa. Con. Stat. Ann. § 7508(a)(3)(iii)[9] (100+ grams and prior drug trafficking conviction): 7 years

  Maximum possible sentence:  35 P.S. § 780-113(f)(1.1): 10 years

  Maximum possible under enhancement statute: 35 P.S. § 780-115(a):[10] (up to twice term):  20 years

---

[9]  18 Pa. Con. Stat. Ann. § 7508(a)(3)(iii), Drug Trafficking sentencing & penalties:

> when the aggregate weight of the compound or mixture containing the substance involved is at least 100 grams; five years in prison and a fine of $25,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity; however, if at the time of sentencing the defendant has been convicted of another drug trafficking offense: seven years in prison and $50,000 or such larger amount as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity.

[10]  35 P.S. § 780-115 Second or subsequent offense

> (a) Any person convicted of a second or subsequent offense under clause (30) of subsection (a) of section 13 of this act or of a similar offense under any statute of the United States or of any state may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.

- Criminal Conspiracy, 18 Pa. Con. Stat. Ann. § 903

Maximum permissible sentence: 18 Pa. Cons. Stat. Ann. § 905[11]

Maximum possible sentence: (same as object of conspiracy):  35 P.S. § 780-113(f)(1.1): 10 years

Based on the above it is clear that the sentence Mr. Jenkins received for each sentence fell within the maximum sentence allowed under the respective statutes.  Because the trial court reviewed the nature of the offense and the pre-sentence report, considered the appropriate sentencing guideline ranges, and adequately stated its reasoning for issuing its sentence, this court cannot conclude that the trial court abused its discretion when sentencing Mr. Jenkins.  Accordingly, Mr. Jenkins' second habeas claim is denied.[12]

─────────────────────

[11] 18 PA. CONS. STAT. ANN. § 905 provides, in pertinent part:

**(a) Grading**. - Except as otherwise provided in this title, attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is an object of the conspiracy.

18 PA. CON. STAT. ANN. § 905(a).

[12] To the extent Mr. Jenkins seeks to argue that the trial court improperly enhanced his PWID sentence with a mandatory 5 year minimum assigned to certain drug offenses committed with firearms, it is deemed waived and procedurally defaulted without excuse. Although raised at sentencing (Doc. 27-2, ECF p. 79), and a motion for modification of sentence (*Id.*, ECF p. 90), Mr. Jenkins' trial counsel failed to raise this issue before the superior court on direct appeal (*Id.*, ECF p. 109). A federal habeas court may not grant a state petitioner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). Such a claim cannot be reviewed or provide a basis for habeas relief unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). Here, Mr. Jenkins does not argue "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v.*

(continued...)

**C.    Pursuant to AEDPA, this Court Defers to the State Court's Decision Denying Mr. Jenkins' Ineffective Assistance of Trial Counsel Claims.**

The remainder of Mr. Jenkins' habeas claim are premised on the alleged ineffectiveness of trial counsel.  In particular, Mr. Jenkins faults trial counsel for:  (1) failing to object to the introduction of hearsay testimony that he and Mr. Morales were "marijuana-smoking buddies;" (2) failing to challenge Officer Clarkson's unverified testimony that Mr. Jenkins had $444.00 in his possession at the time of his arrest and four cell phones; (3) failing to object to the trial court's jury instruction on flight or concealment; (4) failing to challenge the admission of certain items recovered from the home following the execution of the search warrant (letters addressed to Ms. Gonzalez; mens clothing and sneakers; and photographs of him and other unidentified males); and (5) failing to object to the Detective McBride's

---

[12](...continued)

*Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986).  Likewise he does not show "actual prejudice resulting from the errors of which he complains." *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).  The fundamental miscarriage of justice exception requires that the petitioner supplement his claims with a "colorable showing of factual innocence."  *Id.* at 495, 111 S.Ct. at 1471.  As to that standard, the burden is on the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995).  Clearly that is not the case here, Mr. Jenkins' PWID conviction is overwhelmingly supported by the record.  Moreover, Mr. Jenkins' PWID sentence carried a higher mandatory minimum than the firearms enhancement due to the quantity of cocaine seized (over 100 grams) and because of his conviction of a prior drug trafficking offense.  As the trial court found, even though it imposed the mandatory 5 year sentence based on the discovery of a gun in the kitchen, "it doesn't seem like that's going to make much of a difference," because of the other enhancements.  (Doc. 27-2, ECF p. 93).  Mr. Jenkins is not entitled to relief on this procedurally defaulted claim.

hearsay statements regarding his conversation with Ms. Parker concerning her payments to Ms. Gonzalez for babysitting services.

### 1.    Legal Standard

Under *Strickland v. Washington*, a habeas petitioner is required to establish two elements in order to state a successful claim for ineffective assistance of counsel: (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense."  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  The *Strickland* test is conjunctive and a habeas petition must establish both the deficient performance prong as well as the prejudice prong.  *See Id*. at 687, 104 S.Ct. at 2064; *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010).  However, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases.  *Id*. at 687 - 89, 104 S.Ct. at 2064 - 65.  This requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Harrington*, 562 U.S. 86, 104, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2001)(quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.)  When a claim implicates both AEDPA and *Strickland's* highly deferential standards, the court's

review of an ineffective assistance claim is "doubly" deferential.  *Harrington*, 562 U.S. at 105, 131 S.Ct. at 788.

In considering this part of the standard, the reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Harrington*, 562 U.S. at 104, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).  The Court recognizes that there are "'countless ways to provide effective assistance in any given case'" and that "'[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'"  *Id.* at 106, 131 S.Ct. at 778–89 (quoting Strickland, 466 U.S. at 689).  In assessing whether counsel performed deficiently, the court must "'reconstruct the circumstances of counsel's challenged conduct' and 'evaluate the conduct from counsel's perspective at the time.'"  *Id.* at 107, 131 S.Ct. at 779 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).  Further, the inquiry is contextual in that "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy."  *Id.* at 791, 131 S.Ct. at 791.  With regard to the prejudice prong, "the likelihood of a different result must be substantial, not just conceivable."  *Id.* at 792, 131 S.Ct. at 792 (quoting *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067-68).  "In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'"  *Berghuis v. Thompkins*, 560 U.S. 370, 389, 130 S.Ct. 2250, 2265, 176 L.Ed.2d 1098 (2010)(quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069).

Finally, it is well-established that an attorney cannot be ineffective for failing to raise a meritless argument or objection.  *See Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010)(citing *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998)); *see also United States v. Barnes*, 324 F.3d 135, 139-40 (3d Cir. 2003)(rejecting ineffectiveness claim predicated upon failure to advance a non-meritorious claim).

The court now turns to the ineffectiveness of counsel claims that were properly exhausted when they were presented by Mr. Jenkins to the state courts and ruled upon during his PCRA appeal.[13]  Given the state court review of Mr. Jenkins' ineffectiveness claims, the question before the court is not whether Mr. Jenkins' trial counsel actions were reasonable, but rather "whether the state court's application of the *Strickland* standard was unreasonable."  *Harrington*, 562 U.S. at 101, 131 S.Ct. at 785.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.  *Id*. at 101, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 2149, 158 L.Ed.2d 938 (2004)).  Therefore, Mr. Jenkins must show "that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an

---

[13]  At the time the Pennsylvania state courts reviewed Mr. Jenkins' ineffectiveness claims, *Strickland's* two pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims.  Under Pennsylvania state jurisprudence, a three prong test is applied to ineffective assistance of counsel claims.  However, this is of no consequence as it, in substance, is identical to *Strickland*.  *See Commonwealth v. Bedell*, 954 A.2d 1209, 1211-1212 (Pa. Super. 2008).  The Third Circuit Court of Appeals has held that the Pennsylvania test "is not contrary to *Strickland*."  *Jacobs v. Horn*, 395 F.3d 92, 106 n. 9 (3d Cir. 2005)(citing *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000)).  So the issue remains simply whether the superior court's decision was an unreasonable application of the *Strickland* standard.

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103, 131 S.Ct. at 786-87.  As long as "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard," habeas corpus relief must be denied under § 2254(d)'s highly deferential standard. *Id*. at 105, 131 S.Ct. at 788.

The court will now consider the exhausted ineffectiveness claims in turn.

**2.      Ineffective Assistance of Trial Counsel Claims**

**(a.)    Whether Mr. Jenkins' Allegation that his Trial Counsel was Ineffective for Failing to Object to Introduction of Hearsay Statement by Detective Shaffer that co-defendant Morales was Mr. Jenkins' "marijuana-smoking buddy" was Reasonably Rejected by the State Court as Meritless.**

Mr. Jenkins asserts that his trial counsel, Attorney Maffett, failed to object to the hearsay introduction of his co-defendants' statement that they were marijuana-smoking buddies.  (Doc. 27-2, ECF p. 248.)  Mr. Jenkins notes that immediately prior to Detective Shaffer's testimony the judge instructed the Commonwealth to "talk to your officer and make sure he doesn't mention Jenkins at all in his testimony."  (Doc. 27-1, ECF p. 209.)  Mr. Jenkins believes this prejudiced his case because it suggested to the jury that he was predisposed to engage in illegal acts. (Doc. 27-2, ECF p. 250.)

Here, the state post-conviction court rejected this claim, concluding that Mr. Jenkins had failed to establish any prejudice as a result of his counsel's failure to object to the admission of this information.  The superior court noted that in addition

-27-

to the charges Mr. Jenkins was convicted of, he was charged with, but acquitted of, possession with intent to deliver marijuana.  Just prior to Detective Shaffer's testimony, Mr. Jenkins' counsel specifically advised the court that he was "all right" with Mr. Morales' statement that he and Mr. Jenkins were marijuana-smoking buddies being introduced at trial.[14]  (Doc. 27-1, ECF p. 208.)  At the PCRA hearing, Mr. Jenkins' counsel testified that he did not object to the introduction of this information because it offered a reasonable basis for the quantity of marijuana recovered at the apartment.  Specifically, counsel believed it suggested that Mr. Jenkins "merely used that drug with Morales," rather than sold it to others.  (Doc. 27-2, ECF p. 315.)  In other words, counsel's trial strategy was to use the statement to argue that Mr. Jenkins was a recreational marijuana user and that the marijuana found in his apartment was for personal use.  The superior court held that Mr. Jenkins "could not establish prejudice because the jury acquitted him of possession with intent to deliver marijuana."  (*Id.*, ECF p. 315.)  Further, the superior court also determined that "given the strength of the Commonwealth's evidence, precluding the brief, isolated reference to marijuana usage would not have affected the verdict with respect to the remaining charges."  (*Id.*)

In light of the foregoing, the state court's findings, that trial counsel's conduct in failing to object to the hearsay testimony that Mr. Morales was Mr. Jenkins' "marijuana-smoking buddy" was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

---

[14]  This testimony was elicited during Mr. Morales' counsel's cross-examination of Detective Shaffer.

In the context of the instant petition, the court finds that Mr. Jenkins has failed to demonstrate by "clear and convincing evidence," that the state court's determination of the facts, which are presumed to be correct, was unreasonable.  Consequently, Mr. Jenkins will be denied relief on this claim.

> **(b.)   Whether Mr. Jenkins' Claim that his Trial Counsel was Ineffective for Failing to Impeach Various Police Officers as to the Amount of Money or Number of Telephones Confiscated from him during his Arrest was Reasonably Rejected by the State Courts as Meritless.**

Mr. Jenkins alleges that his trial counsel was ineffective because he failed to impeach Detective McBride and Officer Clarkson concerning testimony that four cell phones and $444.00 was found on his person at the time of his arrest.[15]  (Doc. 27-2, ECF p. 251.)  He claims there was a discrepancy in the amount, and the denomination, of the money taken from him.  Mr. Jenkins states he had $401.00 in his possession, not $444.00, and that contrary to Detective McBride's testimony, that sum was not broken down into small denominations, but consisted of several hundred dollar bills.  He states the Commonwealth did not bring the cash to trial as an exhibit.  (*Id.*, ECF p. 261 and p. 263.)  He claims the admission of the fabricated testimony as to the breakdown of the money made it appear to the jury that he was "obviously a drug dealer by having small bills on [him]."  (*Id.*, ECF p. 252.)

---

[15]   At his PCRA hearing, Mr. Jenkins testified that there was no discrepancy or inconsistencies between trial testimony and the discovery that was provided by the Commonwealth concerning the recovery of four cell phones at the time of his arrest.  (*Id.*, ECF p. 251.)

At the PCRA hearing, counsel testified that he had received the discovery inventory sheet that reflected the sum of $444.00, in the denominations that were testified to in court, and which included the make of each of the four cell phones recovered when Mr. Jenkins was arrested and accepted it as "truthful testimony." (*Id*., ECF p. 267.)  Counsel testified that he had no "reason to believe it was false and [he] didn't challenge it."  (*Id*.)  The state court noted that at trial the Commonwealth produced the four telephones and cash recovered from Mr. Jenkins. (Doc. 27-1, ECF pp. 228- 31.)  However, trial counsel stated that because Mr. Jenkins never raised a concern that the amount or denominations of funds seized from him was inaccurate or any discrepancies regarding the cell phones, he saw no reason to challenges the officers' testimony on these matters.  (Doc. 27-2, ECF p. 267 - 68.)  The Pennsylvania Superior Court found Mr. Jenkins' claim without merit noting that "[e]ven if there actually was $44 discrepancy between the arrest records and the trial testimony, we agree with the PCRA court that exposing the disparity would have had little, if any, effect on the verdict."  (Doc. 27-2, ECF p. 316.)

The record supports the state post-conviction court's finding trial counsel's actions were reasonable given the fact that Mr. Jenkins failed to alert him to any discrepancies between the seized evidence and trial testimony concerning the evidence, or that the discrepancies noted were so minor they had "little, if any, effect on the verdict."  (*Id*.)  Mr. Jenkins has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1) - (2). This

claim will be denied.


>  **(c.)    Whether Mr. Jenkins' Claim that his Trial Counsel was**
>  **Ineffective for Failing to Object to Trial Court's Jury**
>  **Instruction on Flight or Concealment was Reasonably**
>  **Rejected by the State Courts as Meritless.**

Mr. Jenkins asserts counsel should have objected to the trial court's jury

instruction on flight or concealment because he never was in custody when Officer

Hansen asked for his identification which he went into the house to retrieve.  (Doc.

27-2, ECF p. 254.)  He argues that he did not run from the officer.  (*Id*.)  He noted

that at that time Officer Hansen did not believe any "crimes were being committed."

(*Id*., ECF p. 255.)  Mr. Jenkins believes the fact that the instruction was given

prejudiced him in the eyes of the jury.  (*Id*.)

At trial Officer Hansen testified that on March 19, 2004, she went to 315

North Penn Street based on a tip that someone had spotted Akeem Cole, a fugitive

homicide suspect at that location.  (Doc. 27-1, ECF pp. 56 - 57.)  When she arrived

at the house she saw a black male on the front porch.  As she walked up the

sidewalk towards the front porch she asked to see his ID.  She testified that "[h]e

turned around and started to run into the front door.  I ordered him to stop.  He kept

going."  (*Id*., ECF p. 57.)  Mr. Jenkins' attorney testified at the PCRA hearing that he

recalled Officer Hansen's testimony was that "when she asked for ID when Mr.

Jenkins went inside, [his] recollection was that she told him to stop or halt."  (*Id*.,

ECF p. 268.)  He also recalled that Officer McBride, who was around the back of the

building, testified to seeing Mr. Jenkins "try to come out the window on the second

floor" and that he too told Mr. Jenkins to "halt or stop" but that Mr. Jenkins "went

back in."  (*Id.*, ECF p. 269.)  It was trial counsel's "understanding of the law was that

that would constitute sufficient flight for him to give the instruction, so [he] did not

object to the instruction."  (*Id.*)  The superior court reviewing the PCRA court's denial

of this claim adopted the PCRA court's reasoning as its own and denied the appeal.

Based on the trial testimony in this matter, and the PCRA transcript, the court

finds that it was not an objectively unreasonable application of the *Strickland*

standard for the superior court to reject this ineffective assistance of counsel claim

on the basis that Mr. Jenkins failed to make the requisite showing that, but for his

counsel's failure to object to the inclusion of the jury flight or concealment jury

charge, there was a reasonable probability that the outcome of the trial would have

been different.  In sum, the state court's decision on this claim is not objectively

unreasonably.  Mr. Jenkins has not shown the state courts' rulings rejecting this

claim resulted in a decision that was either (1) contrary to, or involved an

unreasonable application of, clearly established U.S. Supreme Court precedent, or

(2) based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1) - (2).  This

claim will be denied.

**(d)   Whether Mr. Jenkins' Claim that his Trial Counsel was Ineffective for Failing to Object to the Introduction of Non-Relevant Items Recovered During the Execution of a Search Warrant at the North Penn Apartment was Reasonably Rejected by the State Courts as Meritless.**

Mr. Jenkins claims that trial counsel was ineffective for failing to object to the introduction of various letters, articles of clothing (including more than sixty pairs of sneakers), and numerous photographs seized from the apartment.  At trial there was testimony that the confiscated letters were all addressed to Ms. Gonzalez and originated from individuals incarcerated at various state correctional institutions. (Doc. 27-2, ECF p. 256.)  The names and address of some of the individuals who sent letters to Ms. Gonzalez was revealed to the jury, but the letters themselves were not available to the jury.  (*Id.*)  Expensive clothing, which did not have Mr. Jenkins' name on it, was also admitted at trial.  (*Id.*, ECF p. 257.)  Mr. Jenkins felt the introduction of the letters prejudiced him because it showed the jury "that we was conversating with known convicted felon[s]".  (*Id.*)  He states the introduction of the clothing was prejudicial because the Commonwealth tried to use  this evidence to "prove that [he] was living there at the time."  (*Id.*)

At trial there was testimony that all of the confiscated letters were addressed to Ms. Gonzalez and sent to her by incarcerated individuals.  Mr. Jenkins' trial counsel successfully blocked the admission of any letters that were sent by Mr. Jenkins while incarcerated in state prison under another name, Roy Jeter.  Trial counsel stressed the admission of such testimony would prejudice his client.   The trial court agreed.  (Doc. 27-1, ECF p. 171.)  As for the remaining letters addressed

to Ms. Gonzalez, trial counsel testified at the PCRA hearing that he did not object to their introduction because they were addressed to Ms. Gonzalez, and not his client, and did not mention his client by name.  (Doc. 27-2, ECF p. 269.)  Additionally, counsel argued he did not object "to the letters because [he] actually thought they discredited [Ms. Gonzalez]."  (*Id.*, ECF p. 269.)  "[T]o the extent that they had probative value it was to discredit Norma Gonzalez, the co-Defendant who was testifying as a Commonwealth witness."  (*Id.*, ECF pp. 269 - 70.)  Defense counsel stated it was a strategic decision on his part not to object to testimony concerning the letters that did not reference his client.  (*Id.*, ECF p. 270.)

Turning now to the clothing confiscated from the apartment.  Ms. Gonzalez testified that Mr. Jenkins had keys to the apartment and was living there with her at the time of his arrest.  She also testified that he would keep his clothing in the third floor bedroom and his extensive sneaker collection on the second floor.  At the PCRA hearing, trial counsel testified that he established via cross-examination of the Commonwealth's witness that there was no proof that any of the confiscated clothing belonged to Mr. Jenkins.  However, other than that, he did not "object to it otherwise . . . because [he] thought . . . it was reasonable and probative evidence for the Commonwealth to try to get into evidence and that [he] didn't have any grounds to keep it out."  (*Id.*, ECF p. 360.)   Finally, in its opinion, the superior court noted that the issue of "[t]he photo album was not discussed at the post-conviction evidentiary hearing."  (Doc. 27-2, ECF p. 318.)

The superior court held that trial counsel's decision not to object to the introduction of the letters addressed to Ms. Gonzalez "had a reasonable basis."  (*Id.*)

-34-

Additionally, the state court found that trial counsel "correctly determined that the Commonwealth was entitled to argue that the presence of the shoes and male clothing constituted circumstantial evidence that [Mr. Jenkins] resided in the apartment where the drugs were located.  However, as there was no evidence that [Mr. Jenkins] actually owned those items, it is unlikely that they played a critical role in the jury's determination of guilt.  Similarly, [the superior court was] not persuaded that the photo album, which contained photographs of [Mr. Jenkins] and other unidentified males, was prejudicial and prompted the jurors to conclude that [Mr. Jenkins] was part of a drug ring, particularly when there was no indication that a large organization existed in this case."  (*Id.*)

Based on this court's review of the record, it was reasonable for the state court to conclude that counsel's failure to object to the introduction of the letters, clothing, sneakers and photographs did not constitute ineffective assistance of counsel.  The state court's findings on this issue are neither contrary to, nor involve an unreasonable application of, clearly established federal law, and are not based on an unreasonable determination of the facts in light of the evidence peresented in the state court proceedings.  The court will deny habeas relief as to this claim.

**(e.)** **Whether Mr. Jenkins' Claim that his Trial Counsel was Ineffective for Failing to Object to the Introduction of Hearsay Testimony by Detective Shaffer Concerning his Discussion with Melissa Parker to Verify Ms. Gonzalez's Income was Reasonably Rejected by the State Courts as Meritless.**

Mr. Jenkins alleges his trial counsel was ineffective for failing to object to the introduction of hearsay testimony concerning Melissa Parker's statements to Detective Shaffer concerning her payment to Ms. Gonzalez for babysitting services. (Doc. 27-2, ECF p. 258.)  He claims he was prejudiced by the introduction of this information because the statements were hearsay, and because they conflicted with Ms. Gonzalez's statements as to where she got her money to pay her bills.  (*Id*., ECF pp. 258 - 59.)

At the PCRA hearing, trial counsel testified that co-defense counsel elicited the testimony from Detective Shaffer, not him, concerning how much money Ms. Parker paid Ms. Gonzalez for babysitting services.  (Doc. 27-2, ECF pp. 271 - 72.) Counsel stated that he did not object to the introduction of this evidence because it was clear from Ms. Gonzales's testimony that her name was on the apartment lease, she left there, and he "thought to try to create a reasonable doubt that one of the reasonable doubts was that it was Norma Gonzalez' drug operation and not Robert Jenkins'.  So to the extent that she didn't have a source of income or that her — what she told the police was different than what the police found from another witness, [he] thought that impeached her and at least a little bit helped to establish that maybe she was the person involved in the drug operation."  (*Id*., ECF p. 272.)

The state court noted that during trial Detective Shaffer testified that he questioned Ms. Gonzalez about her source of income suggesting that she did not have sufficient lawful income to explain how she afforded her rent or the "expensive clothing and shoes" found in her home.  (Doc. 27-1, ECF p. 218.)  She told him that she earned money babysitting for two women, Rosa and Melissa Parker.  (*Id*.)  She indicated she earned approximately  "$125 per week from Rosa and she got paid $75 a week from Parker."  (*Id*.)  She then provided Detective Shaffer with Ms. Parker's phone number.  (*Id*., ECF p. 219.)  Detective Shaffer contacted Ms. Parker to verify Ms. Gonzalez's earlier statements.  (*Id*.)  Ms. Parker verified "that she does give [Ms. Gonzalez some money when she needs it" but that "she never gave her more than $40."  (*Id*.)

The state court also took note of trial counsel's testimony at the PCRA hearing.  Counsel stated that he did not object to the introduction of this evidence because the lease for the apartment where large quantities of drugs were found was in Ms. Gonzalez's name, and she testified she lived there.  Based on this information trial counsel "thought to try to create a reasonable doubt that one of the reasonable doubts was that it was Norma Gonzalez's drug operation and not Robert Jenkins'.  (*Id*., ECF p. 272.)  So to the extent that she didn't have a verified source of income or what she told the police was different than what the police learned from others, trial counsel thought the conflicting information "impeached her and at least a little bit helped to establish that maybe she was the person involved in the drug operation."  (*Id*.)

Based on this information the state court found that trial counsel had explained a reasonable trial strategy for not objecting to the introduction of Detective Shaffer's testimony regarding his conversation with Ms. Parker.  Specifically, the state court held "[t]he testimony at issue discredited a valuable prosecution witness and was therefore beneficial to the defense."  (Doc. 27-2, ECF p. 320.)

It is evident that the state court identified the proper standard, i.e. the *Strickland* standard, and applied it in a reasonable manner.  Therefore, Mr. Jenkins has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this court rejects Mr. Jenkins' final ineffective assistance of counsel claim.

## V.     Certificate of Appealability Denied

Pursuant to 8 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability (COA), an appeal may not be taken from a final order in a proceeding under 8 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  8 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller–El v. Cockrell*, 537 U.S. 322, 327, 123

S.Ct. 1029, 1034, 154 L.Ed.2d 931 (2003).  Based on the analysis in this

memorandum, there is no basis for the issuance of a COA.

## VI.    Conclusion

Based on the foregoing discussion, the petition for writ of habeas corpus will

be denied.  Petitioner is advised that he has the right for thirty (30) days to appeal

the court's Order denying his habeas petition, *see* 8 U.S.C. § 2253(a); Fed. R. App.

P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent

him from doing so, as long as he also seeks a certificate of appealability from the

United States Court of Appeals for the Third Circuit.  *See* Fed. R. App. P. 22(b);

Local Rule of Appellate Procedure 22.1.

An appropriate Order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:  March 24, 2015**